## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **BRIAN MCCONNELL,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )**CIVIL ACTION 19-0174-WS-MU** |
| | ) |
| **AMERICAN GENERAL LIFE** | ) |
| **INSURANCE COMPANY,** | ) |
| | ) |
| **Defendant.** | ) |

## ORDER

This matter is before the Court on the parties' cross-motions for partial summary judgment, confined to the single issue of the applicable standard of review of the defendant's decision to terminate the plaintiff's benefits under ERISA. (Docs. 23, 25).[1] The defendant believes the correct standard is arbitrary and capricious, while the plaintiff contends that judicial review is *de novo*. The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 23-25, 28-29), and the motions are ripe for resolution.

## BACKGROUND

According to the complaint, (Doc. 1), the plaintiff purchased through his employer a contract of salary continuance insurance, including long-term disability ("LTD") benefits. The defendant initially approved the defendant's

---

[1] Magistrate Judge Murray ordered the parties to file cross-briefs "on the applicable standard of review," in anticipation that the Court would resolve the issue as a predicate to a settlement conference. (Doc. 22 at 1). The plaintiff styled his brief as a motion for partial summary judgment, (Doc. 23), which appears to be a correct designation, since the parties seek definitive resolution of a "part of [a] claim or defense." Fed. R. Civ. P. 56(a). Although the defendant styles its filing as a brief, (Doc. 25), it is properly understood as a cross-motion for partial summary judgment.

application for LTD benefits but, after approximately ten years, terminated all benefits and denied the plaintiff's appeal of this decision. In a single count, the complaint asserts that the defendant's conduct violates ERISA.

## DISCUSSION

The parties agree that the plaintiff filed a claim for disability benefits in 2009. The defendant and its predecessor paid benefits without interruption from 2009 to June 2018, when the defendant terminated benefits. After the plaintiff appealed the termination, the defendant obtained an independent medical review of his medical records and then rejected the appeal – based primarily on that review – in February 2019, without first disclosing to the plaintiff the reviewer's report.

The Department of Labor ("DOL") has promulgated a regulation that deals with this situation. In the context of appeals of adverse benefit determinations:

> The claims procedures of a plan providing disability benefits will not, with respect to claims for such benefits, be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless … the claims procedures …
> [p]rovide that before the plan can issue an adverse benefit determination on review on a disability benefit claim, the plan administrator shall provide the claimant, free of charge, with any new or additional evidence considered, relied upon, or generated by the plan, insurer, or other person making the benefit determination …. sufficiently in advance of the date on which the notice of adverse benefit determination on review is required to be provided … to give the claimant a reasonable opportunity to respond prior to that date ….

29 C.F.R. § 2560.503-1(h)(4)(i) (2019). The defendant admits it did not comply with this provision. (Doc. 29 at 3). The plaintiff argues that the defendant's failure to do so "results in this claim being subject to a de novo standard of review." (Doc. 23 at 7). The defendant responds that it did not violate subsection (h)(4)(i), because that provision does not apply to the plaintiff's claim. The

defendant continues that, even if subsection (h)(4)(i) does apply, the defendant's violation of it does not alter the standard of review. (Doc. 25 at 5-7).

## I. Applicability of Subsection (h)(4)(i).

DOL published the final rule revising subsection (h)(4)(i), and adding or revising other portions of Section 2560.503-1, in December 2016. Claims Procedure for Plans Providing Disability Benefits, 81 Fed. Reg. 92,316-01 (Dec. 19, 2016). The "summary" introduction to the final rule states that "[t]his rule is effective January 18, 2017" and that "[t]his regulation applies to all claims for disability benefits filed on or after January 1, 2018." *Id*. at 92,316 (hereinafter, "summary statement").[2] The defendant relies on the summary statement to argue that, because the plaintiff's "clai[m] for disability benefits [was] filed" in 2009, not "on or after [April 2], 2018," subsection (h)(4)(i) does not apply to its termination decision. (Doc. 25 at 6; Doc. 29 at 4-7).

The plaintiff offers various reasons the summary statement should not be construed as the defendant would have it. The Court need not address those arguments, because the defendant's position fails for a simpler reason. The applicability of subsection (h)(4)(i) is not governed by the summary statement but by the regulation itself (which the defendant does not acknowledge), and Section 2560.503-1(p) by its terms provides that subsection (h)(4)(i) applies to claims filed in 2009.

"Except as provided in paragraphs (p)(2), (p)(3) and (p)(4) of this section, this section shall apply to claims filed under a plan on or after January 1, 2002." 29 C.F.R. § 2960.503-1(p)(1). "[T]his section" is of course Section 2960.503-1. Thus, unless excluded by subsections (p)(2)-(4), subsection (h)(4)(i) applies to the

---

[2] DOL later delayed the applicability date to April 2, 2018. Claims Procedure for Plans Providing Disability Benefits; 90-Day Delay of Applicability Date, 82 Fed. Reg. 56,560-01 at 56,560 (Nov. 29, 2017).

plaintiff's 2009 claim.  As discussed below, these subsections do not exclude subsection (h)(4)(i) from application to the plaintiff's claim.

Subsection (p)(2) addresses health plans, not disability plans, and so is not relevant.  In any event, subsection (p)(2) provides that Section 2960.503-1 applies to all health claims filed on or after January 1, 2003 – an opening date long before 2009.

Subsection (p)(3) provides that certain provisions added or revised by the 2016 final rule apply only to disability claims filed after April 1, 2018.  Those provisions are listed, and the list does not include subsection (h)(4)(i), or indeed any portion of subsection (h).

Subsection (p)(4) provides that certain provisions, including subsection (h)(4), do not apply to claims for disability benefits filed between January 18, 2017 and April 1, 2018 (although a modified version of some of these provisions does apply to such claims).  Because the plaintiff's claim was not filed in 2017 or 2018, it is not impacted by this exception to subsection (p)(1).

Because subsection (p)(1) establishes the general rule that Section 2560.503-1 applies to claims filed after 2001, and because subsections (p)(2)-(4) do not except subsection (h)(4)(i) from the general rule as to claims filed in 2009, that subsection applies to the plaintiff's claim.

It might be argued that, although subsection (p) unambiguously applies revised subsection (h)(4) to claims filed between 2002 and 2016, DOL did not really intend that result (since it carved out subsection (h)(4) from applicability to claims filed between January 2017 and April 2018).  It is doubtful that a court permissibly could, on the basis of DOL's assumed intent, re-word subsection (p)(3) to insert subsection (h)(4) among those provisions not applicable to claims filed before April 2018.[3]  The question, however, is moot.  "There is no burden

---

[3] *See, e.g., Logan v. United States*, 552 U.S. 23, 35 n.6 (2007) ("[E]nlargement of a statute by a court, so that what was omitted, presumably by inadvertence, may be included within its scope transcends the judicial function.") (internal quotes omitted).

upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.  Rather, the onus is on the parties to formulate arguments …." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).  By ignoring the actual regulatory language of Section 2560.503-1(p), the defendant forfeited any argument that the provision does not mean what it says or that it may permissibly be judicially altered to accomplish what it plainly does not.

The defendant does note that the final rules giving rise to the version of Section 2960.503-1 preceding the current version contained a similar summary statement regarding applicability date; that courts enforced this statement according to its terms; and that they thus did not apply the section to claims filed before the date mentioned in the summary statement.  (Doc. 29 at 5-6).  It is true that DOL's summary of the former final rule stated that "[t]his regulation applies to all claims filed on or after January 1, 2002."  Employee Retirement Income Security Act of 1974; Rules and Regulations for Administration and Enforcement; Claims Procedure, 65 Fed. Reg. 70,246-01 at 70,246 (Nov. 21, 2000).  However, unlike in this case, the regulation employed the same operative language as the summary statement:  "This section shall apply to claims filed under a plan on or after January 1, 2002."  *Id*. at 70,271.

The defendant violated subsection (h)(4)(i) in February 2019, when it rejected the plaintiff's appeal without complying with that provision.
The question becomes one of identifying the consequences of the defendant's violation.

## II.  Standard of Review.

The defendant offers a very limited argument in support of an arbitrary and capricious standard in the face of its violation of regulatory procedural safeguards: the defendant argues only that the Eleventh Circuit has already definitively rejected a *de novo* standard in such a situation.  The defendant does not argue that,

even if the issue is open in the Eleventh Circuit, the Court should reject *de novo* review; much less does the defendant offer any analysis to support reaching such a conclusion. (Doc. 25 at 7; Doc. 29 at 2-3, 8-9). The Court therefore will employ arbitrary and capricious review only if the Eleventh Circuit has in fact foreclosed *de novo* review.

There are only two relevant Eleventh Circuit opinions. In *Torres v. Pittston Co.*, 346 F.3d 1324 (11th Cir. 2003), the defendant failed to issue a determination within the time allowed by regulation. The plaintiff argued that this failure to act resulted in a deemed denial of his claim and that, since a deemed denial entails no exercise of discretion to which to defer, judicial review should be *de novo*. *Id*. at 1332. The panel did not rule on this issue but instead remanded to allow the trial court (which did not explain its refusal to apply a *de novo* standard) to address the issue in the first instance. *Id*. at 1333-34. Since *Torres* did not decide the issue, plainly it did not preclude employment of *de novo* review. The defendant does not suggest otherwise.

In *White v. Coca-Cola Co.*, 542 F.3d 848 (11th Cir. 2008), the defendant failed to give the plaintiffs, as required by regulation, notice of their right to appeal an adverse determination. The plaintiffs "cite[d] *Torres* [citation omitted] for the proposition that this failure permits courts to review the decisions of the administrator without deference." *Id*. at 855. The *White* Court responded that "*Torres* creates no such permission" and that "*Torres* does not, in any event, require us to alter our standard of review." *Id*. at 855-56. It is clear from this language that the *White* plaintiffs made the same error as the defendant here: rather than asking the *White* panel to establish a standard, they argued only that the Eleventh Circuit had already established the standard they favored. The *White* Court declined to employ *de novo* review in that case, not by holding that such review can never be justified by a defendant's violation of regulatory requirements, but by the more limited means of rejecting the plaintiffs' argument that *Torres* of itself compelled *de novo* review.

The *Torres* panel noted the position of DOL "that a denial occurring without the minimum procedural safeguards provided by ERISA statutes and regulations should not be reviewed deferentially." 346 F.3d at 1333 n.11. Had *Torres* adopted that position, it might well have been controlling in *White*, and here. Because, however, "[t]he parties did not cite this agency explanation, … the district court did not have occasion to determine to what extent, if any, the agency interpretation is entitled to deference …," *id*., and it was left to the trial court on remand to consider its impact. The *White* panel stated that *Torres* "declined to adopt that broad position" of the DOL, 842 F.3d at 856, but it did not (and could not, accurately) suggest that *Torres* affirmatively rejected that position; on the contrary, *White* acknowledged only that *Torres* had not in footnote 11 adopted a *de novo* standard of review.

The *Torres* Court cited appellate cases from other circuits ruling that a deemed denial gives rise to *de novo* review as well as appellate cases reaching an opposite conclusion. 346 F.3d at 1332-33. The *White* Court noted that this split – and *Torres* – involved deemed denials, not (as in *White*) violations of other regulatory provisions, such that *Torres* could not be controlling in *White*: "This appeal does not involve an administrative failure to exercise discretion, and *Torres* does not, in any event, require us to alter our standard of review." 842 F.3d at 856.

Rather than any analysis of *White*, the defendant offers its *ipse dixit* that *White* "outright rejected the argument that other procedural violations" than deemed denials could result in *de novo* review. (Doc. 29 at 2-3; *accord id*. at 9). Raw conclusions, of course, do not substitute for legal analysis and, as discussed above, careful dissection of *White* indicates that it does not support the defendant's position. Nor is it plausible that the Eleventh Circuit would resolve, in a single paragraph that rejects none of the available lines of support for *de novo* review (not even the DOL language it had just acknowledged), an issue that has vexed appellate courts for years and spawned extended discussions spreading over

multiple pages of the Federal Reporter.  *E.g., Halo v. Yale Health Plan*, 819 F.3d 42, 50-58 (2nd Cir. 2016).

The defendant cites *Melech v. Life Insurance Co. of North America*, 2015 WL 4744356 (S.D. Ala. 2015), in support of its position.  After block quoting the single relevant paragraph from *White*, the *Melech* Court concluded without amplification that "[t]he trigger for application of the 'pure *de novo* review' appears to be the absence of a decision by the plan administrator."  *Id*. at *22.  As *Melech* did not scrutinize *White*'s language and reasoning, the Court does not find it persuasive.

Because the Eleventh Circuit has not foreclosed *de novo* review under the circumstances, and because the defendant offers no other argument in favor of an arbitrary and capricious standard of review, this action will be governed by *de novo* review.  As the defendant recognizes, (Doc. 29 at 8), the plaintiff champions that version of *de novo* review prevailing in the Second Circuit.  Since the defendant neither identifies flaws in this approach nor proposes any alternative, that version, as explicated in *Halo*, will apply in this case.

## CONCLUSION

For the reasons set forth above, the plaintiff's motion for partial summary judgment is **granted**, and the defendant's motion for partial summary judgment is **denied**.  The applicable standard of review in this case, whether it is ultimately resolved by settlement, dispositive motion or trial, is *de novo*.

DONE and ORDERED this 21st day of January, 2020.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE