IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BRIAN MCCONNELL, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 19-0174-WS-MU |
| | ) |
| AMERICAN GENERAL LIFE | ) |
| INSURANCE COMPANY, | ) |
| | ) |
|     Defendant. | ) |

ORDER

This matter is before the Court on the plaintiff's amended motion for attorneys' fees and costs. (Doc. 38). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 38, 43, 49), and the motion is ripe for resolution. After careful consideration, the Court concludes that the motion is due to be granted in part and denied in part.

BACKGROUND

The plaintiff brought this ERISA action when the defendant, after paying long-term disability ("LTD") benefits for approximately ten years, terminated all benefits and denied the plaintiff's appeal. The parties attended a settlement conference conducted by the Magistrate Judge but were unable to agree on the applicable standard of review. To further settlement discussions, they requested a dispositive ruling on the standard of review, (Doc. 21), which the Court provided. (Docs. 30, 34). The defendant thereafter reinstated the plaintiff's LTD benefits and paid the plaintiff's previously unpaid benefits with interest. (Doc. 38 at 2).

"In any action under this subchapter …, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). The defendant concedes the plaintiff is entitled to an award of

attorney's fees and costs, and it does not insist on entry of judgment as a predicate to such an award. (Doc. 43 at 2-3).

## DISCUSSION

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), a figure known as the "lodestar." *Norman v. Housing Authority*, 836 F.2d 1292, 1299 (11th Cir. 1988).[1] *Hensley* construed 42 U.S.C. § 1988, but "[t]he standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" 461 U.S. at 433 n.7. A plaintiff need not be a "prevailing party" in order to receive an award under Section 1132(g)(1),[2] but appellate courts routinely apply *Hensley* to ERISA fee awards.[3] The parties agree the Court should do likewise.[4]

---

[1] "In determining what is a reasonable hourly rate and what number of compensable hours is reasonable, the court is to consider the 12 factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008). However, "the lodestar as calculated in *Hensley* presumptively includes all" the *Johnson* factors. *Norman*, 836 F.2d at 1299.

[2] *Hardt v. Reliance Standard Life Insurance Co.*, 560 U.S. 242, 244 (2010).

[3] *E.g., Johnson, Trustee v. Charps Welding & Fabricating, Inc.*, 950 F.3d 510, 526 (8th Cir. 2020); *Gross v. Sun Life Assurance Co.*, 763 F.3d 73, 86 (1st Cir. 2014); *Welch v. Metropolitan Life Insurance Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007); *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96 (2nd Cir. 2006); *Stark v. PPM America, Inc.*, 354 F.3d 666, 674 (7th Cir. 2004).

[4] While adjustments to the lodestar amount are in some cases possible, *e.g., Lee v. Krystal Co.*, 918 F. Supp. 2d 1261, 1264-65 (S.D. Ala. 2013), neither party seeks such an adjustment.

### A. Reasonable Hourly Rate.

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299. "The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." *Id*. Again, "fee counsel bears the burden in the first instance of supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate." *Id*. at 1303. "[S]atisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits." *Id*. at 1299.

"The general rule is that the relevant market for purposes of determining the reasonable hourly rate for an attorney's services is the place where the case is filed." *American Civil Liberties Union v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999) (internal quotes omitted). "If a fee applicant desires to recover the non-local rates of an attorney who is not from the place in which the case was filed, he must show a lack of attorneys practicing in that place who are willing and able to handle his claims." *Id*.

Mr. Soloway, who served as lead counsel, seeks an hourly rate of $425. He bases this rate on: his long experience in litigating ERISA matters; his standard $500 per hour rate in non-contingent fee ERISA cases; a $350 per hour award made to another ERISA lawyer in Birmingham; and the opinions of three fellow ERISA practitioners that $425 is a more than reasonable rate. (Doc. 38 at 7-9; Docs. 38-9, 38-11, 38-12, 38-13).

Mr. Soloway's office is in Pensacola, which is located in the Northern District of Florida. His practice apparently focuses there, as a review of CM/ECF shows he has been counsel of record in over 200 cases in that District over a span

of some 35 years. Over the same period, he has appeared as counsel of record in just five cases in the Southern District of Alabama.[5]

Because this case was filed in the Southern District of Alabama, the relevant market lies within this District.[6] The plaintiff offers no evidence of prevailing rates in this market, much less any evidence of rates actually billed and paid in this market. Instead, he argues that he need not do so because he qualifies for the *Barnes* exception. To support this proposition, he offers Mr. Soloway's declaration that residents of this District "frequently … will hire counsel in Pensacola such as myself, or in more Northern parts of Alabama or in other states … due to their inability to find competent or willing local counsel" to handle ERISA cases. (Doc. 38-9 at 4). The plaintiff argues that, "[w]ith no Erisa hourly rate fee awards in the Southern District of Alabama in the last 9 years, together with the paucity of Erisa cases filed in this District by so few local attorneys who do not appear to regularly handle Erisa cases in the first instance, justifies such consideration" of the *Barnes* exception. (Doc. 43 at 9). The Court cannot accept these assertions at face value.

The Court's review of CM/ECF reveals, in addition to this case, 40 ERISA cases pursued by individual plaintiffs in the Southern Division of this District in the past ten years. This is not a "paucity." The plaintiffs in 25 of those cases (62.5%) were represented by counsel from Mobile or Baldwin County. Five other plaintiffs (12.5%) were represented by counsel from elsewhere in the Southern District, and two others represented themselves. Only eight plaintiffs (20%) were

---

[5] Only one of his previous four cases in this District, which was voluntarily dismissed in 1997, involved ERISA. *Armstrong v. Guarantee Mutual Life Co.*, 96-0642-AH-S.

[6] *See, e.g., Norman*, 836 F.2d at 1305 ("[T]o the extent that fee applicants rely on an award made in the Northern District of Alabama, there is no evidence that the prevailing market rates in that area are the same as in Montgomery [in the Middle District of Alabama].").

represented by counsel from outside this District.[7] These figures negate the assertion that ERISA plaintiffs cannot "find … willing local counsel."

Over 20 lawyers from Mobile and Baldwin County have represented individual ERISA plaintiffs in this District in the past ten years, a figure that refutes the assertion that "few local attorneys" take such cases. At least seven of these lawyers are AV rated by Martindale Hubbell, and most of them are known by the Court to be far more than merely competent, which refutes the unsupported assertion that "competent … local counsel" cannot be found.

The plaintiff appears to be correct regarding a dearth of ERISA fee awards in this District, but all this reflects is the frequency with which such cases are settled; it certainly is not evidence of "a lack of attorneys practicing in that place who are willing and able to handle his claims." *Barnes*, 168 F.3d at 437. The plaintiff also appears to be correct that no local lawyers "regularly handle Erisa cases," as the most individual ERISA plaintiffs represented by any of the attorneys addressed above is three. *Barnes*, however, imposes no "regularly handle[s]" requirement; the only question is whether there are local lawyers "able" to handle ERISA claims. As shown above, plainly there are.

Because the plaintiff has failed to demonstrate a lack of local attorneys willing and able to handle his ERISA claim, his counsel are limited to the market rate for this area. As noted, the plaintiff offers no evidence regarding that rate.[8] The defendant, in contrast, presents the affidavit of a prominent local attorney (who is among those discussed above). That affiant identifies a range of $275 to $325 for senior litigation partners having significant ERISA experience, with $300

---

[7] Of the five Northern Division individual ERISA plaintiffs during the same period, three were represented by Southern District counsel; the other two were represented by Birmingham lawyers.

[8] A $350 fee award in Birmingham does not show the prevailing rate in Mobile (although it does suggest that Mobile's rate is lower than that). The plaintiff's affiants (who are not from this area) throw out large hourly rates, but they do not state or suggest that the Mobile market commands such rates.

being the most common rate. (Doc. 43-1 at 4). The defendant proposes the latter rate. (Doc. 43 at 4, 8, 30).

While Mr. Soloway is limited to the local rate, his qualifications and experience, (Doc. 38-9 at 1-3), indicate his rate should be at the upper limit of the applicable range. The Court therefore will make its award based on a $325 hourly rate for lead counsel.[9]

Mr. Soloway was assisted by Mr. Finelli, an associate who became a partner at some undisclosed time in 2019. (Doc. 38-9 at 2; Doc. 38-15). The plaintiff presents no evidence regarding the prevailing market rate for Mr. Finelli, but he seeks $275 per hour. (Doc. 38 at 9). The defendant's affiant identifies the local market rate for associates as $150 to $200, and for mid-level to junior partners with significant ERISA experience as $225. (Doc. 43-1 at 4). The defendant proposes a rate of $175 but concedes that $200 would be reasonable. (Doc. 43 at 10, 30).

While the defendant scoffs at Mr. Finelli's ERISA experience, it appears comparable to that of local partners claiming a $225 rate. Therefore, his compensable time expended in 2020 will be awarded at $225 per hour. His compensable time in 2019 will be awarded at the associate rate of $200 per hour, since the plaintiff failed to establish when he became a partner.

### B. Hours Reasonably Expended.

"Fee applicants must exercise what the Supreme Court has termed 'billing judgment,'" which requires the exclusion of "'excessive, redundant, or otherwise unnecessary'" hours. *Barnes*, 168 F.3d at 428 (quoting *Hensley*, 461 U.S. at 424).

---

[9] To the uncertain extent the plaintiff suggests Mr. Soloway should command an above-market rate because he is a superior ERISA lawyer to those practicing in this market, "[a] prevailing plaintiff is not entitled to have the losing party pay for an attorney with the most expertise on a given legal issue, regardless of price, but only for one with reasonable expertise at the market rate." *Barnes*, 168 F.3d at 437. The plaintiff does not identify any other *Johnson* factor that should prompt the Court to award an above-market rate, and the Court's review satisfies it that they could not justify such a result.

"If fee applicants do not exercise billing judgment, courts are obligated to do it for them …." *Id*. The defendants seek extensive reductions on these bases.

### 1. Premature discovery.

This action was filed on April 3, 2019. The defendant, after waiving service of process, filed its answer on July 8. On or before August 9, the plaintiff proposed early mediation, in light of the defendant's conduct in terminating long-term disability benefits after ten years without any new medical information, and the potential for *de novo* review and consequent unfettered discovery. (Doc. 43-2 at 2). Three weeks later, even after the Magistrate Judge had entered a scheduling order establishing a November 11 deadline for the plaintiff to produce his expert reports, (Doc. 16 at 2), the defendant had not responded. The plaintiff repeated the proposal on August 30 and emphasized the need for mediation to occur within the next three to four weeks so that, should this effort fail, discovery could still be accomplished within the judicially imposed deadlines. (Doc. 43-2 at 2-3). Nevertheless, the defendant did not agree to mediation until on or about September 27. (Doc. 20 at 1). Thanks to the defendant's delay, the resulting settlement conference before the Magistrate Judge did not occur until November 12. (*Id*.). The conference produced no settlement, and the case was resolved only after the Court's January 2020 order confirming the standard of review as *de novo* and its February 2020 order denying the defendant's motion to reconsider that ruling. (Docs. 30, 34).

Despite this history, the defendant claims the plaintiff, prior to the delayed settlement conference, unreasonably performed basic deposition preparation (including the examination of thousands of pages of medical records over the plaintiff's extended disability history), issued written discovery requests (to which the defendant objected on every conceivable ground except prematurity), and prepared a motion to compel. (Doc. 43 at 11-15). The defendant, without offering legal support, considers it "incredibl[e]" that a plaintiff faced with court-imposed

7

discovery deadlines would actually pursue discovery before exhausting all possibility for settlement, but such conduct strikes the Court as eminently reasonable. Indeed, the Court has repeatedly admonished litigants in unpublished orders that, once suit is filed, settlement and litigation are simultaneous tracks, not sequential ones.[10] The Court will make no reduction on this basis.[11]

### 2. Legal research and writing.

The defendant objects that the plaintiff researched matters that did not require research at all, spent too much time researching and writing to matters that did, and over-utilized lead counsel for both research and writing. (Doc. 43 at 16-20). The Court does not find the research topics, or the time spent researching and writing, to be unreasonable and will make no reduction on that basis.[12] The distribution of effort between partner and associate is another matter.

Non-legal work may be performed by a lawyer, but "[i]ts dollar value is not enhanced just because a lawyer does it." *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974). "By analogy, there is work that may be

---

[10] The time preparing deposition files occurred before the defendant answered. This basic preparation could have been reasonably performed weeks prior to the settlement conference, and the defendant suggests no reason why the same work would become unreasonable because performed earlier.

[11] The defendant also complains that the plaintiff expended too much time in crafting the discovery requests, given that they are near-verbatim repetitions of requests counsel issued in another case. (Doc. 43 at 13-14). The plaintiff explains why it was prudent to use such similar requests, (Doc. 49 at 12-13), but he does not explain why it required over ten hours to tweak them. Because this expenditure of time is unreasonable, the requested 10.2 hours will be reduced by half, to 5.1 hours.

[12] The defendant seems to forget that the standard of review was the most crucial issue in the case, the uncertainty surrounding which precluded a successful settlement conference. The defendant seems also to forget that it was its own decision to file a motion to reconsider the Court's adverse ruling on the standard of review that required the plaintiff to engage in a second round of briefing, including on procedural issues first implicated by that motion.

ably done by an associate, such as research, compiling documents, and drafting motions, the value of which is not enhanced merely because it is done by a senior partner." *American Petroleum Institute v. United States Environmental Protection Agency*, 72 F.3d 907, 916 (D.C. Cir. 1996). It is thus not surprising that the Eleventh Circuit has ruled a district court did not abuse its discretion in reducing a fee applicant's claimed hours because, among other things, "senior counse[l] bill[ed] for legal research that could have been assigned to an associate or paralegal." *St. Fleur v. City of Fort Lauderdale*, 149 Fed. Appx. 849, 853 (11th Cir. 2005).

        The Court recognizes that "the maintenance of a rigid bulkhead between partner and associate work is not feasible" in a "tiny firm," such that "occasional" associate work performed by a partner may be acceptable. *Price v. Marshall Erdman & Associates, Inc.*, 966 F.2d 320, 327 (7th Cir. 1992).[13] A number of sister courts have proved sympathetic to the staffing models at small plaintiffs' firms as well. *See In re: Delta/Airtran Baggage Fee Antitrust Litigation*, 2015 WL 4635729 at *24 (N.D. Gal. 2015) (collecting cases). The Court also recognizes that partners' greater experience (and perhaps skill) may "plac[e] them further along the learning curve and enhanc[e] their ability to operate efficiently," reducing the number of hours required to complete what appears to be an associate-level task. *American Petroleum Institute*, 72 F.3d at 916. Nevertheless, "legal research is generally considered to be work that is capable of being performed by more junior attorneys and that should not be billed at partner-level rates." *Mercedes v. Tito Transmission Corp.*, 2019 WL 102007 at *15 (S.D.N.Y. 2019) (internal quotes omitted).[14] Drafting motions and briefs is usually considered likewise.[15]

---

[13] With one partner and two associates, Mr. Soloway's firm qualifies as "tiny."

[14] *Accord Shannon v. Fireman's Fund Insurance Co.*, 156 F. Supp. 2d 279, 301-02 (S.D.N.Y. 2001) (reducing award because, "[w]hile the Court recognizes that in some situations a senior attorney may not have the capacity to delegate tasks [including legal

9

research] to younger associates, that was not a problem here."); *Bryant v. Colgate University*, 996 F. Supp. 170, 172 (N.D.N.Y. 1998) (reducing hours because partners "billed for tasks usually delegated to associates and law clerks, such as research"); *Daggett v. Kimmelman*, 617 F. Supp. 1269, 1281 (D.N.J. 1985) (lowering lodestar because "some, if not a good deal, of the legal research could have been performed by associates and, therefore, billed at a lower rate"); *Callari v. Blackman Plumbing Supply, Inc.*, 2020 WL 2771008 at *12 (E.D.N.Y. 2020) (reducing award because counsel "bill[ed] at a partner's rate for tasks that could have and should have been performed by an associate," including "conduct[ing] legal research"); *Beach Bars USA, LLC v. Indemnity Insurance Corp.*, 2015 WL 11422318 at *4 (S.D. Fla. 2015) ("[W]e also agree … that the hourly rate should be adjusted downward in a case where an upper-level partner does all the work … because counsel is commanding a high billable rate to conduct legal research … that could easily have been accomplished by a less expensive lawyer."); *Woodman v. Bravo Brio Restaurant Group, Inc.*, 2015 WL 3991066 at *2 (M.D. Fla. 2015) ("[C]onducting research [is] a task which should be billed at an associate or paralegal rate, not a partner rate ….") (internal quotes omitted); *Fair Housing Center v. Hunt*, 2013 WL 5719152 at *16 (W.D. Mich. 2013) (reducing award because, where associates were available, "[p]erforming basic research of well-settled *Daubert* principles should not require the expertise of a $300 per hour partner."); *Sloan Valve Co. v. Zurn Industries, Inc.*, 2012 WL 3716961 at *4 (N.D. Ill. 2012) (reducing award because the fee applicant "has not set forth any persuasive reason why it was necessary for senior partners to perform legal research and draft discovery motions; rather, associates are perfectly capable of competently performing such tasks for the partners' review"); *Baynes v. George E. Mason Funeral Home, Inc.*, 2012 WL 993293 at *5 (W.D. Pa. 2012) (reducing partner's hours to associate's rate because "the aforementioned legal research is more generally performed by associates at a law firm rather than partners"); *Hubbard v. Total Communications, Inc.*, 2010 WL 1981560 at *5 (D. Conn. 2010) (reducing award when "no reason is given for not having the research done by an associate rather than a partner"); *Bristol Company Limited Partnership v. Bosch Rexroth Inc.*, 2006 WL 8411605 at *2 n.5 (D. Colo. 2006) ("Although there may be circumstances in which it may make sense for a partner to research and draft legal motions, defendants provide me no evidence from which I might conclude that this case presents such a circumstance.").

[15] *E.g., Orantes-Hernandez v. Holder*, 713 F. Supp. 2d 929, 969 (C.D. Cal. 2010) (reducing award because partner "draft[ed] the procedural background section of the appellate brief," when "preparation of such a summary could have been delegated to a less experienced member of the litigation team"); *Bryant*, 996 F. Supp. at 172 (reducing award because partner "billed for tasks usually delegated to associates and law clerks, such as … writing of first drafts"); *Callari*, 2020 WL 2771008 at *12 (reducing award because counsel "bill[ed] at a partner's rate for tasks that could have and should have been performed by an associate," including "draft[ing] motions papers").

10

In short, "[t]ime spent by high-priced senior lawyers on tasks that junior lawyers could have performed more economically, should be stricken from a reasonable attorney's fee award." *Commodity Futures Trading Commission v. Trade Exchange Network Limited*, 159 F. Supp. 3d 5, 9 (D.D.C. 2015) (internal quotes omitted). Or, as the Third Circuit more memorably phrased the precept: "Nor do we approve the wasteful use of highly skilled and highly priced talent for matters easily delegable to … less experienced associates. … A Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn." *Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3rd Cir. 1983).

In line with these authorities, the Court concludes that, for purposes of fee requests under the lodestar methodology, conducting legal research and preparing first drafts of motions and briefs are tasks that ordinarily should be performed by an associate rather than a partner. A fee applicant may show in a particular instance that it was appropriate for a partner to perform such tasks but, absent such a showing, a fee award for such work should be at the associate's rate.[16]

The plaintiff's only explanation for why Mr. Soloway conducted most of the legal research is that Mr. Finelli, during the relevant time periods of the summer of 2019, December 2019, and February 2020, "was extremely busy handling more than 100 other disability cases." (Doc. 49 at 14).[17] The underlying declaration, however, says no such thing. It states only that, over the course of 14 months (April 2019 to June 2020), Mr. Finelli has had some responsibility for a

---

[16] While many courts have utilized this remedy, others have reduced compensable hours, either surgically or across the board. The Court believes its approach will prove easier to apply, and it appears most consistent with the Eleventh Circuit's direction that, "[i]n less clear cut cases where the court believes that the matter has not been handled efficiently, the court may reflect that fact by decreasing the hourly rate to the market rate charged by lawyers of less skill and experience." *Perkins v. Mobile Housing Board*, 847 F2d 735, 738 (11th Cir. 1988).

[17] The plaintiff does not claim that Mr. Soloway conducted his research more efficiently than Mr. Finelli could have done, and the high number of hours billed by Mr. Soloway for legal research on a finite number of issues would undermine any such claim.

hundred Social Security cases. (Doc. 49-11). There is no statement that all (or any) of these cases were on his plate and consuming all (or any) of his time during the relevant periods, and no assertion that he was too busy to work on this case. On the contrary, Mr. Finelli's time records reflect that he *was* working on this case in December 2019 and February 2020 (48 total hours), on exactly the same briefs as was Mr. Soloway. (Doc. 38-5 at 2-3).

Because the plaintiff has failed to show that legal research in this case was appropriately performed by a partner rather than an associate, Mr. Soloway's time spent conducting such research will be awarded at Mr. Finelli's $200 rate for 2019 and $225 rate for 2020. This rate cut applies to 69.7 hours.[18]

It is not easy to tell from the submitted time entries how much time Mr. Soloway spent on a first draft of the plaintiffs' three briefs on the standard of review (appropriately billed at an associate level), and how much he spent revising and polishing Mr. Finelli's product (appropriately billed at a partner level), though it is clear there was some of both. The defendant proposes to cut this Gordian knot by awarding 70% of the combined briefing time of both lawyers at Mr. Finelli's rate and the remaining 30% at Mr. Soloway's rate. (Doc. 43 at 19). As the plaintiff offers no counter-proposal, the Court accepts this solution.[19] As a result, 15.5 hours of Mr. Soloway's time devoted to briefing between December 8, 2019 and February 26, 2020 will be awarded at Mr. Finelli's then-applicable hourly rate.

---

[18] The affected hours include: 35.4 hours from June 27 through September 12, 2019; 2.5 hours on December 2, 2019; and 31.8 hours from December 8, 2019 through February 26, 2020. The latter figure represents half the hours billed on entries that included both legal research and other activity in the description of work performed.

[19] *Cf. Bivins*, 548 F.3d at 1350 ("When a district court finds the number of hours claimed is unreasonably high, … it may reduce the requested hours with an across-the-board cut.").

### 3. Redundant lawyering.

"There is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." *Norman*, 836 F.2d at 1302. However, "[t]he time billed for excessive lawyers in a courtroom or conference when fewer would do, may obviously be discounted." *Barnes*, 168 F.3d at 433 (internal quotes omitted). The defendant says these principles were violated with respect to the Rule 26(f) conference and the settlement conference. (Doc. 43 at 20-22).

The plaintiff agrees to eliminate the hour Mr. Finelli claims for his attendance, along with Mr. Soloway, at the parties' Rule 26(f) conference. (Doc. 43 at 17).[20] However, the plaintiff argues that his two lawyers had differing areas of responsibility regarding the settlement conference that justified their joint preparation for, and participation in, that conference. In particular, Mr. Soloway focused on the legal issues (especially standard of review), while Mr. Finelli focused on factual issues, including the four thousand pages of medical, vocational and other records extending over the ten years of the plaintiff's disability up to the defendant's sudden termination of benefits. (Doc. 49 at 17-18). There was thus no duplication of effort but rather a distinct contribution by each lawyer. And in a case with over half a million dollars at stake, (*id*. at 2 n.1), it was not unreasonable to prepare a thorough and persuasive presentation to the defendant and the Magistrate Judge. No reduction will be made to counsel's hours regarding the settlement conference.

### 4. Clerical tasks.

Mr. Soloway billed an hour calculating the present value of future benefits,

---

[20] The defendant also proposes elimination of Mr. Soloway's time spent preparing for the conference, but it offers no explanation why such preparation was unreasonable.

using discount rates of 2%, 3% and 4%. The defendant describes this activity as clerical and thus non-compensable. (Doc. 43 at 22).[21] The plaintiff responds that it is legal work and thus compensable at a senior partner rate. (Doc. 49 at 18). The Court rejects both positions.

As fleshed out in prior opinions of the Court, clerical work includes such things as: filing briefs and delivering documents, *Lee v. Krystal Co.*, 918 F. Supp. 2d 1261, 1271 n.13 (S.D. Ala. 2013); making copies and stuffing envelopes, *Cordova v. R&A Oysters, Inc.*, 2016 WL 2642220 at *3 n.7 (S.D. Ala. 2016); internal filing and calendaring appointments, *Johnson v. TMI Management Systems, Inc.*, 2012 WL 4435304 at *5 (S.D. Ala. 2012); updating a pleadings index, *Ceres Environmental Services, Inc. v. Colonel McCrary Trucking, LLC*, 2011 1883009 at *5-6 (S.D. Ala. 2011); arranging for court reporters, *Trotter v. Columbia Sussex Corp.*, 2010 WL 383622 at *8 (S.D. Ala. 2010); and applying Bates stamps to documents, *Allen v. McClain EZ Pack, Inc.*, 2005 WL 1926636 at *3 (S.D. Ala. 2005). Calculating present values is not equivalent to such activity, because it requires considerably more thought and care to generate accurate and useful results.

On the other hand, calculating present values does not require a law degree, and the Supreme Court has recognized that "paralegals are capable of carrying out many tasks … includ[ing] … compilation of statistical and financial data." *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 288 n.10 (1989). It "is improper" to "bill for paralegal or clerical tasks at a lawyer rate." *Lee*, 918 F. Supp. 2d at 1271.[22] The most the plaintiff can be awarded for Mr. Soloway's calculation of

---

[21] "[P]urely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 288 n.10 (1989).

[22] Two paralegals worked on this case for the plaintiff. (Doc. 38 at 7).

present values is thus the local prevailing market rate for paralegals. That hourly rate appears to be $75.[23]

However, paralegal time is recoverable "only to the extent that the paralegal performs work traditionally done by an attorney." *Jean v. Nelson*, 863 F.2d 759, 778 (11th Cir. 1988). *Jenkins* indicates that the calculation of present values "*might* otherwise be performed by a lawyer," 491 U.S. at 288 n.10 (emphasis added), but the plaintiff has not shown that performing such calculations is "traditionally done" by a lawyer. Work performed by a paralegal that is not work traditionally done by an attorney is "unrecoverable overhead expens[e]." *Allen v. United States Steel Corp.*, 665 F.2d 689, 697 (5th Cir. 1982) (former Fifth Circuit case). The hour spent by Mr. Soloway in calculating present values will therefore be excluded.[24]

### 5. Pre-litigation time.

Prior to filing this action, counsel represented the plaintiff in pre-litigation administrative proceedings. The plaintiff seeks recovery for several time entries at the commencement of that representation, primarily the initial conference with the plaintiff and initial review of his documents. The defendant argues that this time is non-compensable under controlling law. (Doc. 43 at 23).

"[W]e conclude that attorney's fees incurred in pre-litigation administrative proceedings are not recoverable under ERISA, 29 U.S.C. § 1132(g)(1)." *Kahane v. UNUM Life Insurance Co. of America*, 563 F.3d 1210, 1214 (11th Cir. 2009). The plaintiff acknowledges *Kahane*, and on this basis he excluded most attorney time preceding drafting of the complaint. The remaining entries are properly

---

[23] *Stevens v. Mobile County Board of School Commissioners*, 2020 WL 1921557 at *6 (S.D. Ala. 2020).

[24] The defendant's only other challenge based on the clerical nature of the task addresses 0.4 hour of Mr. Finelli's time. (Doc. 43 at 22). The plaintiff agrees to this reduction. (Doc. 49 at 18).

15

awarded, he says, because the work they represent is "equally applicable" to the instant litigation. (Doc. 49 at 18-19).

No doubt counsel's initial interview of the plaintiff and initial review of his documents ultimately was helpful to them when this lawsuit was filed almost a year later, but *Kahane* creates no exception for such dual-purpose time entries: "We join these other circuits in holding that § 1132(g)(1) does not authorize awards for work done in pre-litigation administrative proceedings." 563 F.3d at 1215. What matters is when in the process the work was performed, not how valuable the work done in the administrative phase turns out to be in the litigation phase.[25] The single case relied on by the plaintiff addressed the recoverability of attorney's fees in researching and drafting the federal complaint and so is inapt. The challenged entries, totaling 5.4 hours for Mr. Soloway and 1.7 hours for Mr. Finelli, will therefore be excluded.

### 6. Block billing.

"'Block billing' occurs when an attorney lists all the day's tasks on a case in a single entry, without separately identifying the time spent on each task." *Ceres Environmental Services, Inc. v. Colonel McCrary Trucking, LLC*, 476 Fed. Appx. 198, 203 (11th Cir. 2012). This objectionable practice "makes it difficult, if not impossible, to calculate with any precision the number of hours an attorney devoted to a particular task," *Barnes*, 168 F.3d at 429, which in turn "mak[es] it

---

[25] The many appellate decisions quoted and relied on by the *Kahane* Court are equally clear. *See Hahnemann University Hospital v. All Shore, Inc.*, 514 F.3d 300, 313 (3rd Cir. 2008) (no recovery for "fees incurred during administrative proceedings prior to filing suit"); *Rego v. Westvaco Corp.*, 319 F.3d 140, 150 (4th Cir. 2003) (no recovery "for expenses incurred while exhausting administrative remedies"); *Peterson v. Continental Casualty Co.*, 282 F.3d 112, 121 (2nd Cir. 2002) (no recovery for "fees incurred during the initial administrative process"); *Anderson v. Procter & Gamble Co.*, 220 F.3d 449, 455 (6th Cir. 2000) (no recovery "for legal expenses incurred in the course of exhausting administrative remedies"); *Cann v. Carpenters' Pension Trust Fund*, 989 F.2d 313, 316 (9th Cir. 1993) (Section 1132(g)(1) "limit[s] the award to fees incurred in the litigation in court").

difficult for the court to gauge reasonableness." *Ceres Environmental Services*, 476 Fed. Appx. at 203. The defendant identifies 17 entries (all by Mr. Soloway) to which it objects on this basis, and it requests the Court to exclude all 38.6 hours as a penalty, or "at least substantially reduc[e]" the requested hours. (Doc. 43 at 25-27).

After review of the entries and the parties' comments regarding them, the Court concludes that, of those entries which are not effectively addressed elsewhere in this opinion, five both constitute block billing and make it difficult for the court to gauge reasonableness. To avoid "penaliz[ing] the defendan[t] for plaintiff['s] failure to keep more precise records," *Barnes*, 168 F.3d at 423, the time associated with the entries for August 28, November 15, December 12, February 5 and February 11 will be reduced by one third, or 4.4 hours.[26]

### 7. Vague entries.

"In addition to a reduction for block billing, a time entry may be further discounted where the description of the work performed is overly vague." *Cordova v. R&A Oysters, Inc.*, 2016 WL 2642220 at *5 (S.D. Ala. 2016) (internal quotes omitted). The defendant identifies three time entries (all by Mr. Soloway) as impermissibly vague, and it requests that no fee be awarded for the associated hours. (Doc. 43 at 24).

The Court agrees that two of these entries are too vague to support an award, the plaintiff's *post hoc* effort to explain the entries, (Doc. 49 at 20), coming too late.[27] The time associated with the entries for October 21 and December 10, totaling 3.3 hours, will be excluded.

---

[26] In addition, the Court agrees with the defendant that the tasks represented by the May 7 entry must be excluded as clerical, resulting in an exclusion of 0.3 hour.

[27] Moreover, the explanation for one of the entries establishes that it was non-compensable clerical activity.

### 8. Miscellaneous objections.

The defendant identifies several time entries it believes were erroneously included. (Doc. 43 at 28-29). The plaintiff agrees as to all but one of them. (Doc. 49 at 24). The time associated with these entries (three hours for Mr. Soloway and two hours for Mr. Finelli) will be excluded. The Court rejects the defendant's challenge to the reasonableness of the final entry.

### C. Summary.

The plaintiff proposes that Mr. Soloway be awarded $119,000 in attorney's fees, based on 280 hours at an hourly rate of $425. (Doc. 38 at 5). As discussed above, the Court has excluded 19.5 hours of Mr. Soloway's time. Of the remaining 260.5 hours, 66.7 hours will be awarded at the rate of $200; 18.5 hours will be awarded at the rate of $225; and 175.3 hours will be awarded at the rate of $325, for a total award of $74,475.

The plaintiff proposes that Mr. Finelli be awarded $24,887.50 in attorney's fees, based on 90.5 hours at an hourly rate of $275. (Doc. 38 at 5). As discussed above, the Court has excluded 8.1 hours of Mr. Finelli's time. Of the remaining 82.4 hours, 64.5 hours from 2019 will be awarded at the rate of $200, and 17.9 hours from 2020 will be awarded at the rate of $225, for a total award of $16,927.50.

### D. Fees on Fees.

Mr. Soloway has submitted a supplemental declaration asserting that he expended 57.4 hours preparing the plaintiff's reply brief in support of the instant motion. (Doc. 49-20). The plaintiff seeks attorney's fees in the amount of $17,000 (40 hours at $425 per hour) for this effort. (Doc. 49 at 25). While

18

briefing in support of a fee application is compensable,[28] such an award is subject to the *Hensley* reasonableness restriction. Nothing about the reply brief suggests it could reasonably have required 40 hours to prepare, and the Court will reduce the request to 24 hours. Moreover, for reasons explained in Part B.2, Mr. Soloway's time will be compensated at Mr. Finelli's 2020 rate of $225. The approved amount is thus $5,400.

### E. Costs.

The plaintiff requests an award of $590 in costs. (Doc. 38 at 9; Doc. 38-8). The defendant does not oppose the request. (Doc. 43 at 3 n.1).

### CONCLUSION

For the reasons set forth above, the plaintiff's amended motion for attorneys' fees and taxable costs is **granted in part**. The Court awards reasonable attorney's fees of $96,802.50 and costs in the amount of $590. To the extent the plaintiff seeks additional recovery, his motion is **denied**.

DONE and ORDERED this 24th day of June, 2020.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[28] *E.g., Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1301 (11th Cir. 2010).